IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

BMW OF NORTH AMERICA, LLC, ROLLS-ROYCE MOTOR CARS, NA, LLC, ROLLS-ROYCE MOTOR CARS LIMITED, and BAYERISCHE MOTOREN WERKE AG,

    Plaintiffs,

  v.

DINODIRECT CORP.; DINODIRECT CHINA LTD., B2CFORCE INTERNATIONAL CORP., and JIANFENG FENG, an individual,

    Defendants.

No. C 11-04598 WHA

**ORDER GRANTING DEFENDANTS' MOTION TO VACATE DEFAULT JUDGMENT**

## INTRODUCTION

In this trademark-infringement action, defendants move to vacate default judgment. For the following reasons, the motion is **GRANTED**.

## STATEMENT

Plaintiffs design, manufacture, and distribute motor vehicles, automotive parts, and lifestyle items. Plaintiffs own exclusive rights under the Trademark Act to various marks that are used in connection with the sale and distribution of their products (First Amd. Compl. ¶ 22).

Defendants DinoDirect Corp., a Delaware corporation (DinoDirect), DinoDirect China Ltd., a Hong Kong limited liability company (DinoDirect China), B2CForce International Corp., a California corporation, and JianFeng Feng, CEO of DinoDirect China, are allegedly affiliated,

with B2CForce and DinoDirect allegedly operating www.dinodirect.com, and DinoDirect China fulfilling orders placed through the website. Defendants allegedly advertised and sold counterfeit BMW and Rolls-Royce products through the website, as well as through a related wholesale center (*id.* at ¶¶ 10, 27, 31).

In September 2011, plaintiffs commenced this trademark-infringement action seeking injunctive relief and $13.5 million in statutory damages for counterfeit products bearing plaintiffs' trademarks that were sold from defendants' website and wholesale page. All defendants were served. Between February and April 2012, defendants failed to appear in three rounds of court-ordered telephonic alternative dispute resolution, alleging date and time issues and other technical problems (Dkt. No. 63). Consequently, the Clerk granted default as to all defendants (Dkt. Nos. 44, 54).

Shortly thereafter, DinoDirect China sent a letter to the Clerk and plaintiffs' attorneys, disputing claims made in plaintiffs' complaint (Dkt. No. 59). Plaintiffs then moved for default judgment against all defendants. Jenney Zheng, Mr. Feng's secretary, emailed the Clerk several times enquiring what the next steps in the legal process involved, responding to plaintiffs' complaint, and requesting to move the action to a Chinese court or that it be reconciled out of court (Dkt. Nos. 60, 63). On June 19, the undersigned judge issued a notice informing defendants that their emails were not an acceptable form of communication, did not count as an appearance, and should cease immediately (Dkt. No. 70). Defendants were also informed that if they failed to appear via counsel at the hearing scheduled for June 20, default judgment would likely be granted against them (*ibid*.). Defendants were offered the opportunity to appear via counsel in order to procure a short extension so that they could move to set aside plaintiffs' motion for default judgment (*ibid.*). Defendants, however, failed to appear. Instead, defendants DinoDirect China and Feng sent two identical emails to the Clerk on June 19 stating that they would be unable to attend the scheduled hearing on the next day, asking for a lawyer assignment, and disputing some of the plaintiffs' claims asserted in the complaint (Dkt. Nos. 68, 69).

The June 27 order granted plaintiffs' motion for default judgment, permanent injunction, and statutory damages in the amount of $1.5 million as a result of their "willful advertisement

and sale of counterfeit BMW products," of which defendants were deemed jointly and severally liable (Dkt. No. 74). Four months after judgment was ordered, defendants now move to vacate the default judgment pursuant to FRCP 60(b) on the grounds that their failure to obtain counsel and appear before the Court amounted to excusable neglect.

## ANALYSIS

Default judgments are disfavored, and cases should be decided on their merits whenever reasonably possible. *Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985). Pursuant to FRCP 55(c), a district court may set aside the entry of default upon a showing of good cause. Once default judgment has been entered, relief is governed by FRCP 60(b). Where a defendant seeks relief under FRCP 60(b)(1) based upon "excusable neglect," a district court applies the same three factors governing the inquiry into "good cause" under FRCP 55(c). *United States v. Signed Personal Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010). Those factors, which are referred to as the *"Falk* factors" are: (1) whether the defendant's culpable conduct led to the default; (2) whether the defendant has a meritorious defense; and (3) whether reopening the default judgment would prejudice the plaintiff. *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 696 (9th Cir. 2001) (citing *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984)). The determination of what conduct constitutes "excusable neglect" under FRCP 60(b)(1) "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omissions." *Brandt v. American Bankers Ins. Co. of Florida*, 653 F.3d 1108, 1111 (9th Cir. 2011).

### 1. WHETHER THE DEFENDANTS' CULPABLE CONDUCT LED TO THE DEFAULT.

A defendant's conduct is culpable where there is no explanation of the default inconsistent with a devious, deliberate, willful, or bad faith failure to respond. *TCI Group*, 244 F.3d at 698. Neglectful failure to answer as to which the defendant offers a credible, good faith explanation negating any intention to take advantage of the opposing party, interfere with judicial decision-making, or otherwise manipulate the legal process is not "intentional," and is therefore not necessarily culpable or inexcusable. *Id.* at 697–698.

3

Defendants argue that because its decision-makers are Chinese and reside in China, "they failed to understand that their informal efforts to resolve the dispute without the assistance of legal counsel did not relieve them from the obligation to file formal documents with the Court" (Br. 2). Although defendants had prior, albeit limited, experience with United States law and were advised that they should consult an attorney here in order to submit formal pleadings and appear (Dkt. No. 70), this order does not find that their failure to do so was in bad faith.

The cases cited by plaintiffs in which courts have denied motions to vacate default judgments based on a defendant's culpable conduct are distinguishable. For example, plaintiffs cite *Employee Painters' Trust v. Ethan Enters.,* 480 F.3d 993 (9th Cir. 2006), in support of their argument that failing to secure counsel despite clear notice of the need to so qualifies as culpable conduct. In *Employee Painters' Trust*, the corporate defendant was initially represented by counsel who later withdrew. *Id*. at 996. Here, defendants were never represented by counsel. Unlike the defendants in *Richmark Corp. v. Timber Falling Consultant, Inc.*, 937 F.2d 1444 (9th Cir. 1991), defendants did not demonstrate their familiarity with United States courts by retaining local counsel in other matters during the period of delay in this current action. Accordingly, this order finds that while defendants failure to obtain counsel and formally appear was certainly neglectful, it was not necessarily "culpable" as defined by our court of appeals.

**2. WHETHER DEFENDANTS HAVE A MERITORIOUS DEFENSE.**

Defendants dispute various allegations deemed "admitted" by their defaults, including: (1) that they willfully infringed plaintiffs' trademarks; (2) that defendants B2CForce and DinoDirect were involved with operating the website dinodirect.com; and (3) that defendant Feng "personally directed the infringing activities" (Br. 23–24).

"A defendant seeking to vacate a default judgment must present specific facts that would constitute a defense. But the burden on a party seeking to vacate a default judgment is not extraordinarily heavy." *See TCI Group*, 244 F.3d at 700. To satisfy the "meritorious defense" requirement, defendants must "allege sufficient facts, that, if true, would constitute a defense." *Ibid*.

4

Defendants dispute liability on plaintiffs' Lanham Act and related California state law claims. Pursuant to the Lanham Act, any person who shall, without the consent of the registrant, "use in commerce any reproduction, counterfeit, copy or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods . . . shall be liable in a civil action by the registrant for the remedies hereinafter provided." 16 U.S.C. 1114. The foundation of defendants' non-direct infringement argument is that DinoDirect China did not own any of the goods sold through dinodirect.com, did not sell goods, did not provide the content or product information on the website for goods offered for sale, did not place the infringing marks on any products, and did not advertise for any products bearing the infringing trademarks. DinoDirect China argues that it merely operated the internet platform on which other companies sold products by processing payments for purchases and providing warehouse, packing, and shipping services from some of the sellers (Br. 7, 9).

Liability under the Lanham Act may also be premised on a theory of contributory infringement if defendants continued to supply their services to other companies who they knew or had reason to know were engaging in trademark infringement. *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 854 (1982). Based on the pleadings, there are substantial questions of fact as to whether or not defendants continued to distribute the offending products after they became aware of the infringing activity. Defendants allege that immediately after plaintiffs notified DinoDirect China of the alleged infringement, the company removed the infringing products from dinodirect.com and took steps to block unauthorized "BMW" products from being sold through the website (Br. 3–4). These facts, if true, may provide defendants with a meritorious defense or mitigation.

Furthermore, defendants seek to vacate the $1.5 million damages award on the ground that their conduct was not willful. In response, plaintiffs argue that the $1.5 million damages award is "well within the appropriate statutory damages range" for non-willful infringement (Opp. 16–17). Plaintiffs' argument, however, is irrelevant because defendants seek to vacate a default judgment expressly based on a finding of willful infringement.

5

### 3. WHETHER REOPENING THE DEFAULT JUDGMENT WOULD PREJUDICE PLAINTIFFS.

"To be prejudicial, the setting aside of a judgment must result in greater harm than simply delaying resolution of the case. Rather, 'the standard is whether plaintiff's ability to pursue his claim will be hindered.'" *TGI Group*, 244 F.3d at 701 (citing *Falk,* 739 F.2d at 463). To be considered prejudicial, "the delay must result in tangible harm such as loss of evidence, increased difficulties, or greater opportunity for fraud or collusion." *Ibid*.

Plaintiffs argue that they will be prejudiced if the default judgment is vacated as a result of evidence destruction because defendants "off shelved" the offending products (removed them from the website) and returned infringing items to the originating companies (Br. 10–11). This argument is not persuasive. These actions occurred in October 2011, eight months prior to the granting of default judgment. Plaintiffs provide no explanation as to why a delay resulting from vacating the default judgment would cause further harm beyond that which has already occurred.

### CONCLUSION

For the above stated reasons, the Court is provisionally inclined to grant defendants' motion to vacate default judgment subject to **THREE MANDATORY CONDITIONS**: (1) all defendants affirmatively submit to the full jurisdiction of this Court; (2) foreign defendants DinoDirect China Ltd. and Mr. Jianfeng Feng attend depositions in Oahu, Hawaii and produce all responsive documents to a narrow and reasonable set of document requests (up to ten); and (3) the previous two conditions occur before **JANUARY 31, 2013**. Both parties shall file a joint status report by **JANUARY 31, 2013, AT NOON**.

**IT IS SO ORDERED.**

Dated: November 30, 2012.

WILLIAM ALSUP  
UNITED STATES DISTRICT JUDGE